## SAGER v. GLOVE CORPORATION.

### No. 7447.

Circuit Court of Appeals, Seventh Circuit.

March 19, 1941.

Kent W. Wonnell and Lewis F. Jacobson, both of Chicago, Ill., for appellant.

Arthur M. Hood, W. P. Hahn, and Harold B. Hood, all of Indianapolis, Ind., for appellee.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

This is a suit for infringement of Patent No. 2,067,791, the subject matter of which is a hand protector. The court, by decree entered May 3, 1940, sustained the defense of invalidity, as well as non-infringement. The single claim in suit reads as follows:

"A hand protector comprising a body portion or pad with curled sides and a thumb stall, and including a reinforcing patch, the body portion or pad being made up of a single sheet of material, in the form of an oblong blank cut away at one side of the lower end thereof, leaving a triangular-shaped portion, said blank being provided with an inwardly extending slit spaced from the edge left by the cutaway portion to define that portion of the blank which is folded upon itself to form the thumb stall, said triangular-shaped por- tion at the lower end of the blank co-operating with and attached to the upper portion of the blank at the other side of the folded thumb stall for forming or completing one of the curled sides of the hand protector or pad; together with the reinforcing patch and means for securing it to the pad, and a strap connecting the curled-over sides at the back of the hand protector."

The patent discloses a hand protector in the nature of a glove, sometimes called a mitt pad, which covers the thumb, the palm and fronts of the fingers, and, to some extent, the backs of the index and little fingers, leaving the hand back and the backs of the intermediate fingers uncovered except by a narrow strap which connects the two rolled-side edges of the body of the protector. Thus, the device protects the gripping portions of the hand, while leaving uncovered and unprotected, most of the back of the hand, whereby ventilation, not possible in a complete glove, is provided. It is evident that plaintiff can lay no claim as a pioneer in the subject matter of his patent. The patent to Hinze, No. 1,369,810, discloses a device of the same general character. The thumb stall, however, was separate or independent from the main body of the glove. Hinze later improved this defect to some extent in Patent No. 1,631,128, by providing a thumb stall as an integral portion of the glove. The defect in this structure, so it is claimed, is that insufficient protection was afforded between the base of the thumb and the forefinger.

In May, 1934, Patent No. 2,001,961, disclosing a further improvement, was issued to Jensen. This grant shows a structure made from two pieces of material, one of which is to be inserted in the crotch between the thumb and the forefinger, designed to furnish the desired protection at that point. This protection is likewise furnished by the disclosure of the patent in suit, and its claimed advantage over Jensen is that the glove is formed from a single piece of material—in fact, it is expressly so limited by the claim.

In our view of the situation, there is no occasion to enter into a detailed discussion of this alleged improvement. The claims originally filed by Sager were "rejected on Jensen as failing to present anything patentable thereover." Then followed a personal interview between plaintiff and his attorney with the Examiner. Samples of the hand protector shown by Jensen and

also by plaintiff were exhibited for a practical demonstration of the advantage of forming the pad or body portion of the hand protector of a single piece of material so as to dispense with the use of the insert employed by Jensen. At that time, plaintiff argued concerning his device, as follows:

"It cannot be rightfully said that from the construction shown in the patent to Jensen the formation of the blank as shown in this application would be obvious, for the reason that constructing the pad from a single blank is more economical in material as well as more economical in making up the pad. Appreciating the advantages of having the pad or body portion of the hand protector constructed of a single blank this applicant was required to design a particular form of blank for the purpose, and obviously he should be granted a patent to protect the improvement or advance in the art. * * *"

This argument evidently convinced the Patent Office, as is evidenced by the grant of the patent in suit.

Defendant's structure, charged to infringe, it is true, is quite similar to that disclosed by plaintiff. It is distinguished, however, by the fact that it is formed from two separate pieces of material stapled on opposite edges instead of one piece folded and stapled on one edge as disclosed by the plaintiff. There is testimony to the effect that the two-piece device of defendant has some advantages over the one-piece device of plaintiff, just as there is testimony to the effect that the one-piece device of plaintiff has its advantages over the two-piece device of Jensen. It is at once apparent that the plaintiff is in the unfortunate position of attempting, at the same time, to ride two horses traveling in opposite directions. The argument employed before the Examiner to obtain his patent—i. e., that the disclosure of a glove made from a single piece of material was a patentable improvement, defeats his contention of infringement by defendant's glove made from two pieces of material.

This court considered a similar situation in Gillian v. Glove Corp., 7 Cir., 92 F.2d 655, 656. We conclude here, as in that case, that there is no occasion to determine the issue of validity. By the argument, however, which induced the issuance of the patent, it is plain, so we think, that there is no infringement.

At the time of oral argument, counsel for the plaintiff, by motion with certain exhibits attached, called our attention to the fact that two letters had been received · by the Clerk of this Court, written by persons whose names were mentioned in the trial of the cause, but who were not witnesses. By these letters it was sought to deny certain statements or charges by the plaintiff directed at the authors thereof. The writing of these letters, of course, was improper, and, under some circumstances, might be termed inexcusable. There is nothing here, however, to indicate that such parties intended to interfere with the orderly administration of Justice, or a proper decision of the case. Furthermore, there is nothing contained in the letters which has any relevancy to the theory upon which the case has been decided.

The decree of the District Court dismissing the bill of complaint for want of equity is affirmed.